Filed 1/10/14  In re K.T. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.T., a Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>K.T.,<br><br>      Defendant and Appellant. | B244335<br><br>(Los Angeles County<br>Super. Ct. No. NJ25663)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 19, 2013, be modified as follows:

1.  On page 2, in the last sentence of the second paragraph, the word "inside" is changed to " 'attached' and 'in' " her ears, so the sentence reads:

> She had attached earphones to the telephone, and the earbuds of the
>
> earphones were "attached" and "in" her ears.

2.  On page 2, at the end of the second paragraph, add as footnote 1 the following:

> [1] During cross-examination, Yolanda T. explained, as follows, concerning her two earbuds. "They were white, and they had blue at the buds, and one of the buds was busted." The "buds" themselves were approximately "a centimeter and a half" in diameter. They "easily" fit into her ear. "[T]heywere not like the Skull Candy ones where they're stuck in your ears. They're just placed on top of the ear."

3.  On page 3, in the second sentence of the second full paragraph, delete "and a companion were" and replace the phrase with the word "was" so the sentence reads:

> Shortly thereafter, appellant was detained.

4.  On page 3, in the fourth and fifth sentences of the second full paragraph on, delete the words "Neither" and "nor the other youth accompanying appellant had." Add the words "did not have" and "and." The sentences should read as follows:

> Appellant did not have her earphones, and she never recovered them.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

Filed 12/19/13  In re K.T. CA2/3  (unmodifed version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| In re K.T., a Person Coming Under the Juvenile Court Law.<br>_____<br><br>THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>K.T.,<br><br>      Defendant and Appellant. | B244335<br><br>(Los Angeles County<br>Super. Ct. No. NJ25663) |


APPEAL from orders of the Superior Court of Los Angeles County, John C. Lawson II, Judge.  Affirmed.

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Stacy S. Schwartz, Deputy Attorneys General for Plaintiff and Respondent.

_____

K.T. appeals from the orders of the juvenile court declaring him a ward of the court (Welf. & Inst. Code, § 602) as he had committed second degree robbery (Pen. Code, § 211) and ordering him into the Camp Community Placement Program with a maximum term of confinement of 4 years 8 months.

## BACKGROUND

At approximately noon on July 10, 2012, Yolanda T. was in Lakewood at the Lakewood Center Mall. She was on her way to work and walking to a set of exterior doors leading outside the mall. She had her cellular telephone in one hand. She had attached earphones to the telephone, and the earbuds of the earphones were inside her ears.

Appellant approached her from the side in a crouched stance. He used both hands in an attempt to snatch the telephone from her grasp. She pulled the telephone into her chest with her hands, and the telephone slipped out of his hands. He then grabbed the cord of the earphones and jerked the earphones off the telephone and out of her ears. He quickly power walked or jogged off with the earphones to the exterior doors.

Yolanda T. yelled, "Hey, you s-- of a b----." Yolanda T. followed appellant as he walked out the exit doors, calling him names and demanding the return of her earphones. Yolanda T. was 5 feet 2 or 3 inches tall. She weighed about 115 pounds. Appellant was taller than she was. Appellant told her, " 'You want your earphones? Come and get them.' " She walked up to him. He told her if she wanted her earphones, she would have to give him her "snap bag," referring the hat she was wearing. Alarmed he might grab her hat, she took it off and held it behind her and said, "No."

Appellant told her, " 'You want your stuff? Give me what's in your pockets. Give me your phone. Give me what's in your pocket.' " Yolanda T. had previously put her telephone into her pocket. She said, " 'No. Give me back my ear phones.' " At the same time as appellant demanded her property, he was "all over [her]" with his hands, touching her and trying to steal her telephone and snap bag. Yolanda T. pushed him away from her in order to get some distance from him to avoid the theft and punched him in the chest. Appellant punched her right back, but in the chin. That made her furious.

2

She stepped back. She stopped her attempt to retrieve her earphones from him. She told him, " 'You are going to get in trouble for this. You just hit a girl, dude.' " Appellant walked off in the direction of Macy's and Del Amo.

Yolanda T. returned inside the mall and reported the theft and assault to mall security. Shortly thereafter, appellant and a companion were detained. Yolanda T. identified appellant as the robber. She was 100 percent sure of her identification. Neither appellant nor the other youth accompanying appellant had her earphones. She never recovered them.

On redirect testimony, the prosecutor played three video surveillance tapes of the robbery. Yolanda T. identified appellant on the videotape as the robber. The prosecutor told opposing counsel and the juvenile court he had shown Yolanda T. the videotape during the lunch break. But he had not interviewed her concerning the tape.

After seeing the videotape, and while it was played in court for the jury, Yolanda T. testified she was mistaken concerning the order of the events of the robbery. The pushing and punching had occurred inside the mall next to the exit door immediately prior to appellant walking outside the exit doors, not outside the mall doors.

At the close of the hearing, appellant's counsel argued the offense merely constituted theft, not robbery.

The juvenile court found appellant had committed robbery. It relied on the decision in *People v Gomez* (2008) 43 Cal.4th 249 (*Gomez*). It said the *Gomez* decision indicates the theft or robbery is ongoing until the thief reaches a place of temporary safety. If force or fear is used during the escape to a place of temporary safety, the theft constitutes a robbery. That was what happened in this case. The robbery was not over until appellant punched the victim and walked away.

## CONTENTION

On appeal, appellant contends the evidence is insufficient to show robbery, and the crime properly was grand theft. The contention is meritless.

3

1. *Relevant legal principles.*

"In resolving sufficiency of the evidence claims, 'an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Gomez*, *supra*, 43 Cal.4th at p. 265, citing *People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) The standard of review for sufficiency of the evidence in a juvenile case is the same as that for reviewing the judgment for an adult. (*In re Roderick P*. (1972) 7 Cal.3d 801, 809.)

Section 211 defines robbery as " 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' "  Robbery is a continuing offense. (*Gomez, supra,* 43 Cal.4th at p. 254.)  "Although the slightest movement may constitute asportation [citation], the theft continues until the perpetrator has reached a place of temporary safety with the property  [citation]." (*Id*. at p. 255.)  "[*T*]*he taking, either the gaining possession or the carrying away, must be accomplished by force or fear*. [Citation.] . . . [T]he asportation component of the taking continues while the loot is carried away, and does not end on slight movement.' [Citation.]" (*Id.* at p. 257.) A resort to force or fear while carrying away the loot transforms theft into robbery. (*Ibid*.)  If force or fear are in play at any time during the period from caption through asportation, the thief has engaged in conduct elevating the crime from larceny to robbery. (*Id.* at p. 258, citing *People v. Estes* (1983) 147 Cal.App.3d 23, 28.)

"[T]he ' "person or immediate presence" ' requirement of section 211 'describes a spatial relationship between the victim and the victim's property, and refers to the area from which the property is taken.'  [Citation.]  'Thus, the decisions addressing the "immediate presence" element of robbery have focused on whether the taken property was located in an area in which the victim could have expected to take effective steps to retain control over his property.  [Citations.]' " (*Gomez, supra*, 43 Cal.4th at pp. 257-

4

258.)  A victim who tries to stop a thief from getting away with property is in the immediate presence of the property.  (*Id.* at p. 264.)

2. *The analysis*

Appellant's contention misapprehends the nature of appellate review for substantial evidence.  An appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  (*People v. Davis* (1995) 10 Cal.4th 463, 509.)  It is not the function of a reviewing court to reweigh the evidence, reevaluate the credibility of witnesses or redetermine factual conflicts, as those functions are committed to the trier of fact.  (*People v. Culver* (1973) 10 Cal.3d 542, 548.)  Even if a reviewing court might make contrary factual findings or draw different inferences, it is not permitted to reverse the judgment if the circumstances reasonably justify those found by the trier of fact.  (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

The juvenile court found appellant committed robbery.  It reasoned the offense continued after appellant snatched the earphones and during the time the victim attempted to regain her property.  The victim followed appellant as he walked to the exit doors, using racial epithets in an effort to secure his attention.  When she obtained his attention, he again attempted to forcibly remove her telephone from her and indicated he also wanted to take her hat.  She had to push him away and then punch him to get some distance from him in order to stop him from reaching into her pockets and taking her telephone and hat.  Appellant responded by punching her right back, escalating the encounter by hitting her on the chin.  The punch was of sufficient force to deter her from pursuing further efforts to have him return her earphones.  She immediately turned and left the area to obtain aid from mall security in order to have security further pursue obtaining the return of her earphones.

5

Regardless of whether the force of pulling the victim's earphones from her ears was sufficient to constitute robbery, this scenario is ample to demonstrate robbery. The victim was in pursuit of her earphones when appellant punched her. The punch was all the force necessary to transform what might have been mere theft into robbery. This case is no different than *People v. Estes, supra*, 147 Cal.App.3d 23. In *Estes*, the appellant had taken an item from a store without paying for it. In the store's parking lot, a store security guard attempted to retrieve the store's property from the appellant. When the appellant was confronted, the appellant assaulted the guard with a knife rather than return inside the store. The court in *Estes* held the use of force in an effort to retain the property, i.e., the assault with the knife, transformed mere theft into robbery. (*Estes,* at pp. 27-28; see also, discussion in *Gomez, supra*, 43 Cal.4th at pp. 259-260.)

The offense here was robbery, not grand theft.

## DISPOSITION

The orders under review are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

6